# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EARTHA LOUISE HARRIS,

        Defendant-Appellant.

UNPUBLISHED
June 21, 2018

No. 335831
Wayne Circuit Court
LC No. 15-003839-01-FC

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right her jury convictions of assault with intent to do great bodily harm (AWIGBH), MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 3 to 10 years' imprisonment for the AWIGBH conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the April 18, 2015 shooting assault of Kendric Jordan in Detroit, Michigan. That evening, while Jordan was standing on a sidewalk talking to his cousin and his cousin's friend, he saw a four-door burgundy Malibu drive by them. The vehicle was driving in a suspicious manner, which caught Jordan's attention. Jordan identified defendant as the driver of the vehicle. There were two male passengers inside the vehicle. The vehicle turned around, again slowly drove past Jordan, and then parked along the curb. Jordan was able to see an assault rifle in the backseat as the vehicle drove by. Feeling threatened, Jordan walked to his own car that was parked in the street. Jordan saw the two men exit the Malibu. One man was armed with the assault rifle and the other was armed with a Glock handgun, which they pointed toward Jordan's cousin and his cousin's friend. The man with the assault rifle then approached Jordan's vehicle, pointed the rifle at Jordan, and told him to get out of his car. Jordan refused to comply, put his vehicle in reverse, and drove away. Thereafter, approximately 10 shots were fired, two of which struck Jordan. Jordan's injuries required surgery, and he spent approximately two weeks in the hospital.

---

[1] The jury acquitted defendant of an additional charge of carjacking, MCL 750.529a, and an additional alternative charge of assault with intent to commit murder, MCL 750.83.

The next day, the police discovered an abandoned vehicle that matched the description of the vehicle involved in the shooting. The owner of that car had permitted defendant to use it. Thereafter, Jordan viewed a photographic array and identified defendant as the driver of the vehicle at the time of the shooting. The two male suspects were never apprehended or identified.

The prosecution's theory at trial was that defendant was guilty under an aiding or abetting theory. The defense argued that defendant did not have any knowledge that the other two men were armed or intended to assault Jordan, and she did not do anything to assist them in committing the charged crimes.

## I. DEFENDANT'S BRIEF ON APPEAL

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues in her brief on appeal that trial counsel was ineffective for eliciting testimony from the officer in charge that the two men involved in the shooting were never apprehended or identified. We disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo. *Id.* at 188. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, because defendant failed to raise this issue in an appropriate motion in the trial court, and this Court denied defendant's motion to remand for a hearing pursuant to *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973), our review is limited to errors apparent from the record.[2] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Effective assistance of counsel is presumed, and criminal defendants have a heavy burden of proving otherwise. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). When claiming ineffective assistance of counsel, it is a defendant's burden to prove "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Solloway*, 316 Mich App at 188, citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290, citing *Strickland*, 466 US at 694–696. "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

---

[2] *People v Harris*, unpublished order of the Court of Appeals, entered June 14, 2017 (Docket No. 335831).

In this case, during defense counsel's cross-examination of the officer in charge, counsel elicited that the two male participants in the offense were never apprehended or identified. Although Jordan was shown a photographic array that included a possible suspect, he did not identify anyone. Defendant was the only person charged in the matter. In closing argument, counsel argued that there was no evidence that defendant knowingly participated in the offense, and that the only reason she was charged was that the actual participants were never apprehended and the police needed a "scapegoat." Defendant now complains that defense counsel erred by eliciting from the officer in charge that the other male suspects were never apprehended. He contends that this testimony allowed the jury to infer that defendant refused to identify the other men involved, causing the jury to convict her for that reason. We reject this claim of error.

The decision whether to question or cross-examine a witness is presumed to be a matter of trial strategy. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). The prosecution had presented evidence connecting defendant to the shooter's vehicle, and Jordan had identified defendant as the person who was driving that vehicle at the time of the shooting. The prosecution argued that defendant was guilty under and aiding or abetting theory. The defense strategy was to emphasize the lack of direct evidence that defendant knowingly aided in the commission of the offense. Defense counsel elicited from Jordan his agreement that defendant did not get out of the car during the offense, that she never said anything to him or threatened him, and that she did not possess a gun. Counsel pursued the challenged line of questioning to support an argument that defendant was charged because the two male participants were never apprehended or identified, and the police and prosecution were therefore blaming defendant because they needed a scapegoat. Defendant argues that this was unsound strategy because it allowed the jury to speculate that she never told the police the names of the other suspects. However, counsel did not elicit that the police actually spoke to defendant or requested that she provide the names of the occupants of her vehicle and she refused to do so, nor was such testimony presented. Counsel merely elicited that the two male suspects had never been identified or apprehended, which he then used to support the "scapegoat" argument. Defendant has not overcome the presumption that counsel's questioning of the witness was part of a sound trial strategy. The fact that a trial strategy fails does not mean that its use constitutes ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

## B. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support her convictions, or alternatively, that she is entitled to a new trial because the jury's verdicts are against the great weight of the evidence. Again, we disagree as to both arguments.

### 1. SUFFICIENCY OF THE EVIDENCE

A challenge to the sufficiency of the evidence in a jury trial setting is reviewed by this Court de novo. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). The role of this Court is to review the evidence in a light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268

Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

To prove the crime of AWIGBH, the prosecution was required to prove "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (quotation marks and citation omitted). The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Avant,* 235 Mich App 499, 505; 597 NW2d 864 (1999).

In this case, the prosecution argued that defendant, as the driver of the car, was guilty of these offenses under an aiding or abetting theory. "The general rule is that, to convict a defendant of aiding and abetting a crime, a prosecutor must establish that '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *People v Carines*, 460 Mich 750, 768; 597 NW2d 130 (1999). "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "All that is required to prove aiding and abetting felony-firearm is that the defendant aided and abetted another in carrying or having in his possession a firearm while that other commits or attempts to commit a felony." *Moore*, 470 Mich at 68.

Initially, there is no merit to defendant's argument that evidence of her identity as a participant in this matter was lacking. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a single witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *Davis*, 241 Mich App at 700. Defendant was linked to the vehicle involved in the offense and Jordan positively identified defendant as the driver of that vehicle. This evidence was sufficient to establish defendant's identity as the driver of the suspect vehicle. The credibility of Jordan's identification testimony was for the jury to resolve and we will not disturb that credibility determination.

Defendant further argues that the evidence was insufficient to convict her of aiding or abetting the crimes because there was no evidence that she knew that the two male participants were armed with guns or intended to commit a crime when she stopped the vehicle. We disagree. According to Jordan, the assault rifle used in the offense was clearly visible to him from his position on the sidewalk outside the car. He testified that he could see it in the backseat of the car as it drove by. Based on this testimony, the jury could reasonably find that defendant was also able to see the assault rifle and therefore was aware that it was accessible to the other occupants in the vehicle.

-4-

Further, Jordan's testimony describing the manner in which defendant drove the vehicle supported an inference that defendant knowingly assisted the male occupants in committing the crimes. Jordan testified that the vehicle passed him, turned around, and then passed him again by "creeping" at a slow rate, as if it was "scoping" out the area. This testimony supported an inference that the occupants of the vehicle had targeted Jordan and that defendant assisted the two male occupants by turning around, driving past Jordan a second time in a manner that allowed the male occupants to scope out the area and prepare to commit an assault, and then stopped the car so the two men could get out and commit the crimes. The vehicle's abandonment shortly after the shooting also supported an inference of defendant's guilty knowledge as a willing participant in the offense. In addition, the jury could find that defendant was guilty of felony-firearm through her actions of driving the vehicle and assisting her accomplices in carrying and possessing the firearm used to commit the offense.

It was not necessary for there to be evidence that defendant either exited the vehicle or fired any of the firearms to find her guilty of AWIGBH or felony-firearm under an aiding or abetting theory. The evidence that the men were armed with an assault rifle and a Glock handgun allowed the jury to find that a natural and probable consequence of the intended armed assault was that Jordan could be shot, with an intent to cause great bodily harm. The fact that the jury acquitted defendant of carjacking does not support her argument that the evidence was insufficient to support her convictions for the assault and felony-firearm charges. Whereas no actual carjacking was accomplished, the facts supported the commission of the assault and felony-firearm offenses.

In sum, the evidence was sufficient to support defendant's convictions of AWIGBH and felony-firearm.

## 2. GREAT WEIGHT OF THE EVIDENCE

We next address defendant's challenge to the great weight of the evidence. A motion for a new trial based on the great weight of the evidence is entrusted to the trial court's sound discretion. Therefore, a defendant must raise the issue in a motion for a new trial to preserve the issue for appeal. *People v Cameron,* 291 Mich App 599, 617-618; 806 NW2d 371 (2011). Because defendant did not raise this issue in a motion for a new trial and this Court denied her motion to remand on this issue, the issue is unpreserved and is reviewed only for plain error affecting defendant's substantial rights. *People v Musser,* 259 Mich App 215, 218; 673 NW2d 800 (2003).

In *People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009), this Court stated:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App

293, 306; 581 NW2d 753 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993).

As discussed earlier, the credibility of Jordan's identification testimony was for the jury to resolve. We will not disturb that credibility determination. Further, in light of the evidence that the assault rifle was openly visible in the vehicle that defendant was driving, and the evidence of the manner in which defendant operated and maneuvered the vehicle to allow the occupants to target Jordan and "scope out" the area, and then to enable the two male occupants to position themselves and exit the vehicle to commit the crimes, the evidence did not preponderate so heavily against the jury's verdicts that it would be a miscarriage of justice to allow the verdicts to stand. Therefore, we reject this claim of error.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Although we address each of defendant's claims on the merits, we find none warrant appellate relief.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first raises claims of ineffective assistance of counsel, primarily relating to defense counsel's pretrial preparation and presentation of a defense. Because defendant did not raise these claims in the trial court, our review is again limited to errors apparent from the record. *Jordan*, 275 Mich App at 667. To the extent that defendant has submitted additional materials outside the record with her Standard 4 brief, we consider those materials only for the purpose of determining whether they support defendant's alternative request that this Court remand this matter for an evidentiary hearing on his claims.

Defendant argues that defense counsel was ineffective for not properly investigating the case before trial, which in turn prevented counsel from fashioning a reasonable trial strategy. Failure of counsel to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). A sound trial strategy is one based on investigation and supported by reasonable professional judgments. It is counsel's duty to make an independent examination of the facts, laws, pleadings, and circumstances involved in the matter and to pursue all leads relevant to the issues. *People v Grant*, 470 Mich 477, 486-487; 684 NW2d 686 (2004).

First, defendant argues that counsel was ineffective for not interviewing Jordan's cousin, Sergio Washington, and Washington's friend. Defendant admits that the information provided during discovery indicated that the police did not interview Washington or his friend. Defendant also admits that she does not know what information these witnesses could have provided if they had been interviewed. Therefore, even assuming that defense counsel could have located and interviewed the men and failed to do so, which is not apparent from the record, defendant has not established that she was prejudiced by counsel's inaction. Without a showing that the witnesses

-6-

could have provided information helpful to defendant, there is no basis for finding a reasonable probability that the outcome of defendant's trial would have been different if the witnesses had been interviewed. Defendant relies on a statement from Jordan's mother in which she states that she told the police that Washington had Jordan's telephone and she believed that when the police called Washington he told them "wrong number." Even if true, this statement provides no basis for believing that Washington could have provided information that might have affected the outcome of defendant's trial. Accordingly, this claim of ineffective assistance of counsel cannot succeed, and defendant's offer of proof does not demonstrate that remand for an evidentiary hearing on this issue is warranted.

Defendant also argues that counsel was ineffective for not properly investigating discrepancies in Jordan's statements regarding the time of the shooting. Defendant relies on a question asked by a police officer to place the time of the shooting at approximately 7:45 p.m., and on Jordan's preliminary examination testimony that the incident occurred at about 7:30 p.m. Jordan admitted that these were only estimates. Because Jordan was not sure of the precise time, there is no reasonable probability that counsel's failure to explore the time variances affected the outcome.

Next, defendant relies on a statement from Jordan's mother that she thought it was about 8:00 p.m. when Jordan contacted her about being shot. Defendant argues that counsel should have introduced this statement to impeach Jordan's testimony, but as the prosecution argues, the mother's account would be hearsay to the extent it was offered to prove the truth of the matter asserted (i.e., the time when Jordan contacted his mother). MRE 801(c). Defendant also relies on Jordan's mother's statement to the police to argue that counsel should have used that to impeach Jordan's testimony that he called his mother on his cell phone. According to his mother's statement, Washington had Jordan's phone. Once again, however, Jordan's mother's statement would be hearsay if offered to prove the truth of the matter asserted therein (i.e., that Washington had Jordan's phone). MRE 801(c). Accordingly, defendant cannot demonstrate that counsel was ineffective for not attempting to impeach Jordan with his mother's hearsay statements.

Defendant also points out that Jordan made inconsistent statements about whether he drove himself to the hospital or whether his mother took him to the hospital. This subject was explored at trial and defense counsel questioned Jordan on how he actually arrived at the hospital. Therefore, the record does not support defendant's claim that counsel was ineffective in this respect.

Defendant next argues that defense counsel should have used Jordan's inability to identify the shooter to challenge Jordan's identification of defendant as the driver. Although the identity of the shooter was never determined, the record does not support defendant's argument that Jordan lacked the ability to identify the shooter. Defendant relies on Jordan's statement to the police in support of her argument. According to Jordan's statement, however, he provided a detailed description of the shooter and told the police that he thought he would be able to identify the shooter. Jordan also provided a physical description of the second man, but was not sure if he could identify the second man because that person was wearing a hooded jacket. The officer in charge testified that a person who was with defendant at the time of her arrest was apprehended and taken into custody, and a photographic array was conducted, but the man was

not identified as a participant in the offense. This information was presented to the jury. The jury could have reasonably determined that Jordan had the ability to identify the shooter, but never identified anyone because the shooter was never apprehended. Regardless, there is no basis for finding that counsel should have done more to exploit the fact that the shooter was never identified to challenge Jordan's identification of defendant.

Defendant complains that defense counsel never elicited information about which side of the car Jordan was standing on when he allegedly recognized the driver, which defendant maintains could have caused the jury to question whether he had a good view of the driver. However, Jordan testified that the car drew his attention both when it passed by originally and after it turned around and passed him again. Therefore, he would have had views of the driver from both sides of the vehicle. Accordingly, counsel's failure to seek clarification on this point was not significant.

Defendant states that Jordan described her as having weave in her hair at the time of the shooting, but that security video footage of her at a hospital shortly after the shooting would have shown that she did not have a weave. She argues that counsel was ineffective for not using this evidence to impeach Jordan's identification testimony. Defendant relies on "Attachment C" to her Standard 4 brief in support of this argument, but the "Attachment C" to defendant's brief is a blank document. Accordingly, defendant has not factually supported this claim.

Defendant also argues that counsel should have impeached Jordan regarding the number of shots fired because he told the police that six or more shots were fired, but testified at his preliminary examination that 10 shots were fired. At trial, Jordan testified, consistent with his preliminary examination testimony, that about 10 shots were fired. Because Jordan's police statement that six or more shots were fired is not inconsistent with his trial testimony that about 10 shots were fired, any attempt to impeach Jordan on this point would not have affected the jury's verdict. We also reject defendant's claim that counsel should have done more to investigate the shooting scene, presumably to look for spent casings that the police could not locate. The jury was aware of the discrepancy between the number of shots described by Jordan (approximately 10) and the number of shell casings recovered by the police (only 1). The officer explained, however, that the police did not investigate the shooting scene until the day after the offense, so it was possible that additional casings that may have been present were moved by traffic in the interim. There is no basis for concluding that counsel was likely to find additional casings had he inspected the scene. Moreover, even if counsel had investigated the scene and recovered more casings, there is no reasonable probability that this would have changed the result of trial because no weapon was recovered for comparison purposes. Moreover, the recovery of additional casings would have only bolstered Jordan's testimony that multiple shots were fired.

Defendant also argues that defense counsel was ineffective for failing to present a defense. A defendant is entitled to have her counsel prepare, investigate, and present all substantial defenses. Where there is a claim that counsel was ineffective for failing to raise a defense, the defendant must show that she made a good-faith effort to avail himself of the right to present a particular defense and that the defense of which she was deprived was substantial. A substantial defense is one that might have made a difference in the trial's outcome. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Although defendant criticizes counsel for not presenting evidence in defense, she does not explain what additional theory or evidence counsel should have presented in support of a substantial defense. Accordingly, defendant has not met her burden of demonstrating that counsel was ineffective in this regard. Moreover, because defendant has not made an offer of proof in support of a substantial defense, she has not demonstrated that remand for an evidentiary hearing on this claim is necessary. *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

In sum, defendant has not shown that trial counsel was ineffective, and her offers of proof provide no basis for remanding this case for an evidentiary hearing on her claims of ineffective assistance of counsel.

## B. JUDICIAL IMPARTIALITY

Second, in her Standard 4 brief on appeal, defendant argues that she was denied a fair trial by the trial court's questioning of witnesses, which pierced the veil of judicial impartiality. Because defendant did not object to the trial court's conduct at trial, this issue is unpreserved. *Jackson*, 292 Mich App at 597. Therefore, we review this issue for plain error affecting defendant's substantial rights. *Id*.

A criminal defendant is entitled to a "neutral and detached magistrate." *Id.* at 597-598. Therefore, at a jury trial, a judge must avoid conduct that pierces the veil of judicial impartiality. In *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015), our Supreme Court held:

> A judge's conduct pierces [the veil of judicial impartiality] and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Footnote omitted.]

This is a "fact-specific analysis[,]" and the pivotal inquiry is whether "the judge's conduct was sufficiently severe and clear so as to create the appearance of bias against the aggrieved party." *Id*. at 171 n 3. A reviewing court must consider the trial court's conduct in light of "the totality of the circumstances," whereby,

> the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. [*Id*. at 172 (citations omitted).]

When evaluating a judge's questioning of witnesses, reviewing courts must bear in mind that such interrogation is allowed under MRE 614(b).[3] *Stevens*, 498 Mich at 173. The Court in *Stevens* explained:

> This Court has stated that the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information. Judicial questioning, nevertheless, has boundaries. The Michigan Code of Judicial Conduct states:
>
> > A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but the judge should bear in mind that undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on the judge's part toward witnesses . . . may tend to prevent the proper presentation of the cause, or the ascertainment of truth in respect thereto . . . . In addressing counsel, litigants, or witnesses, the judge should avoid a controversial manner or tone. A judge should avoid interruptions of counsel in their arguments except to clarify their positions, and should not be tempted to the unnecessary display of learning or a premature judgment. [Code of Judicial Conduct, Canon 3(A)(8).]
>
> It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally. It is essential that the judge "not permit his own views on disputed issues of fact to become apparent to the jury." [*Stevens*, 498 Mich at 173-174 (citations omitted).]

Defendant argues that the trial judge pierced the veil of judicial impartiality by questioning Jordan after the parties had conducted their examinations of the witness. The basis for defendant's claim of error is that the court commented to Jordan that he should face the jury when he responded to the court's questions. The court initially told Jordan that it intended to ask him some questions and then remarked, "But look at the jury, okay, and answer these questions." Later, the court advised Jordan: "These additional questions have been asked of you by members of the jury. Okay. So kindly look at them and I'll ask you the question, all right?" There is nothing about the court's comments that show any advocacy or partiality by the court. As a whole, the trial court's questioning of Jordan did not favor one side or the other, and the questions were intended to clarify Jordan's account of the incident. Defendant asserts that some of the court's questions about Jordan's injuries, including how long he stayed in the hospital and his mood after the shooting may have been irrelevant. But we believe the questions were

---

[3] MRE 614(b) provides that "[t]he court may interrogate witnesses, whether called by itself or by a party." MRE 614(c) allows a party to object to the trial court's questioning of a witness, either at the time of interrogation or at the next available opportunity when the jury is not present.

probative of the requisite intent for the assault charges. Regardless, the questions do not demonstrate that the court's questioning on this subject pierced the veil of impartiality.

Defendant asserts that the trial court falsely attributed some of the questions it asked to jurors. She maintains that the questions were actually the court's own questions. Defendant offers no support for this claim, and accordingly, has not shown a plain error.

Defendant also challenges the trial court's questioning of the officer in charge, Levan Adams, but does not explain how the court's questions were improper. She claims only that the court falsely stated that its questions were submitted by jurors, but again, nothing in the record supports this claim.

Defendant argues that the court's questions to Adams about missing spent shell casings may have been adversarial. Viewed in context, the court appears to have simply sought clarification of whether there could be an explanation for the discrepancy between Jordan's account of hearing approximately 10 gunshots and the discovery of only one shell casing. When the court inquired whether traffic could have moved the shell casings around, defense counsel objected to the question on the basis of speculation, after which the court further clarified that the recovered shell casing was found on the street, near the curb. This inquiry, particularly when considered in the context of the court's other questions, did not create an appearance of advocacy or partiality against defendant. Therefore, the trial court's questioning of Adams did not amount to plain error.

Because we have concluded that the trial court's questioning of witnesses did not pierce the veil of judicial impartiality, we also reject defendant's related claim that defense counsel was ineffective for failing to object to the court's questions. Any objection on this basis would have been futile, and counsel is not ineffective for failing to make a futile objection. *People v Darden,* 230 Mich App 597, 605; 585 NW2d 27 (1998).

## C. SENTENCING GUIDELINES

Third, defendant challenges the trial court's scoring of several sentencing guidelines offense variables (OVs). She challenges the court's scoring decisions on both factual and legal grounds, and further argues that the court's reliance on judge-found facts to score several of the OVs violated her Sixth Amendment right to a jury trial. We note that defendant preserved her challenges to the scoring of OV 3 and OV 4 with appropriate objections at sentencing, but did not preserve her appellate challenges to the scoring of OV 1 and OV 2. Further, defendant did not argue at sentencing that the trial court's scoring of the guidelines violated her Sixth Amendment rights, leaving that issue unpreserved as well.

When reviewing a challenge to the scoring of the sentencing guidelines, this Court reviews the trial court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* Unpreserved sentencing issues are reviewed for plain

error affecting defendant's substantial rights. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

Initially, we reject defendant's argument that the trial court's scoring of certain OVs on the basis of judge-found facts violated her Sixth Amendment right to a jury trial. In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still permitted to score the OVs using judge-found facts. *Id.* at 392 n 28. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016),

> [t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a mandatory minimum sentence range, which constitutional violation was remedied in *Lockridge* by making the guidelines *advisory*, not by eliminating judicial fact-finding.

Our Supreme Court issued its decision in *Lockridge* on July 29, 2015. Defendant was sentenced on August 12, 2015. Because the guidelines were advisory at the time defendant was sentenced, the trial court's reliance on judge-found facts to score the guidelines did not violate defendant's Sixth Amendment rights.

Turning to defendant's challenges to specific scoring decisions, defendant first argues that the trial court erred by assessing 25 points for OV 1. MCL 777.31(1)(a) directs a court to assess 25 points for OV 1 if "[a] firearm was discharged at or toward a human being." We agree with defendant that there was no evidence that she personally discharged a firearm at another person. However, the evidence showed that defendant's accomplice discharged a firearm at Jordan during an assault, and defendant was convicted of aiding or abetting that assault. The directions for OV 1 provide that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b). We disagree with defendant's argument that even though this was a multiple offender case, the court was prohibited from assessing points against her on the basis of her accomplice's conduct because the accomplice was never identified, charged, or convicted. Defendant's reliance on *People v Johnston*, 478 Mich 903-904; 732 NW2d 531 (2007), in support of this argument is misplaced. That case stands for the proposition that OVs 1 through 3 should be scored the same when multiple offenders are all convicted of the same offenses. The case does not hold that points may not be scored for a single defendant where his or her accomplices were never charged and convicted. In this case, the jury found that defendant aided or abetted the commission of an assault with intent to do great bodily harm, which included the use of a firearm, and the evidence that Jordan was shot established that the offender discharged a firearm at another person. Therefore, the trial court did not err in assessing 25 points for OV 1.

Defendant raises a similar challenge to the trial court's assessment of five points for OV 2, which is the appropriate score where "[t]he offender possessed or used a pistol, rifle, shotgun,

or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). Like OV 1, MCL 777.32(2) states that "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." For the same reasons discussed with respect to OV 1, the trial court did not err in scoring OV 2 on the basis of a co-offender's possession or use of a firearm in this multiple offender case, even though no other person was charged or convicted in the case.[4]

Next, the trial court assessed 25 points for OV 3 because a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Only 10 points are to be scored if "[b]odily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). As with OV 1 and OV 2, MCL 777.33(2)(a) provides that, "[i]n multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points." Again, because this was a multiple offender case, the trial court could properly assess points against defendant based on a co-offender's conduct, even though defendant's accomplices were never identified, charged, or convicted in the matter. Therefore, the question is whether a life-threatening or permanent incapacitating injury occurred to a victim. The record discloses that Jordan was shot twice. One bullet punctured a lung and affected his breathing, and the other bullet entered his stomach. He required surgery and an extensive hospital stay to recover from his injuries. A preponderance of the evidence supports the trial court's finding that Jordan's injuries were life threatening. Therefore, the trial court did not err in assessing 25 points for OV 3.

Lastly, defendant argues that the trial court erred by assessing 10 points for OV 4, which is the appropriate score where a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Although defendant points out that it was undisputed that Jordan had not received professional treatment for any psychological injury, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). The trial court heard from both Jordan and his mother at sentencing. Jordan stated that, since the shooting, he cannot sleep and wakes up many times during the night because of dreams about being shot again. He was also experiencing other emotional issues that caused him to rage out at people. Jordan's mother similarly stated that Jordan could not sleep and sometimes woke up screaming, crying, and asking, "Why?" She had spoken to him about seeking treatment with a psychologist or psychiatrist. Jordan explained that he had not sought professional help because he did not like to talk to others and preferred to handle matters on his own. Despite the fact that Jordan had not actually sought out professional treatment for his issues, a preponderance of the evidence showed that he suffered a serious psychological injury that required professional treatment. Therefore, the trial court did not err in scoring OV 4 at 10 points.

---

[4] Because the trial court did not err in scoring OV 1 or OV 2, we reject defendant's related claim that counsel was ineffective for failing to object to the scoring of these offense variables. Any objection would have been futile, and counsel was not required to raise a futile objection. *Darden,* 230 Mich App at 605.

## D. ATTORNEY FEES AND COSTS

Finally, defendant challenges the trial court's assessment of attorney fees and costs as part of the judgment of sentence, without inquiring into her ability to pay the assessed costs of $600 and the assessed attorney fees of $600. Because defendant did not object below to the form or manner of these assessments, or the amounts assessed, these claims are unpreserved and review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

Contrary to what defendant argues, the trial court did not err by assessing attorney fees in the judgment of sentence instead of a separate order. Defendant's reliance on *People v Dunbar*, 264 Mich App 240, 255-256; 690 NW2d 476 (2004), overruled in part on other grounds in *People v Jackson*, 483 Mich 271 (2009), is misplaced. The rule in *Dunbar* has been abrogated by MCL 769.1k(1)(b)(*iv*), which now permits a trial court to impose attorney fees as part of a sentence. Further, the trial court was not required to review defendant's ability to repay the assessed attorney fees and costs at the time they were imposed. *People v Jackson*, 483 Mich 271, 298; 769 NW2d 630 (2009). A court is not required to review a defendant's ability to pay until the fees are enforced. *Id*. Until such time as a defendant files a proper petition in the trial court, there is no obligation by the trial court to review the defendant's ability to pay the assessed fees. *Id*. at 296-299. Accordingly, defendant has not established a plain error with respect to the trial court's assessment of attorney fees and costs.

Affirmed.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause

-14-